IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JACKIE D. SEYMORE #411539, | ) |
| | ) |
| Petitioner, | ) No. 3:16-cv-01963 |
| | ) |
| v. | ) JUDGE TRAUGER |
| | ) |
| MICHAEL W. PARRIS, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

Petitioner Jackie D. Seymore, an inmate in the Turner Trousdale Correctional Center in Hartsville, Tennessee, filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254, which was referred to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions, and report and recommendation on disposition under 28 U.S.C. § 636(b)(1). (ECF No. 27.) The respondent has filed an answer and asserted that the court should dismiss the petition with prejudice (ECF No. 26), and the petitioner filed a reply. (ECF No. 33.) Pending before the court are the Report and Recommendation ("R & R") of the Magistrate Judge that the petition be dismissed (ECF No. 34), and objections filed by the petitioner. (ECF No. 35.)

I. STANDARD OF REVIEW

When a magistrate judge issues an R & R regarding the disposition of a claim or a case, the district court must review *de novo* any portion of the R & R to which a specific objection is made, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Federal courts have routinely deemed objections "waived" where the objections merely restate the party's arguments that were

previously addressed by the magistrate judge. *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."); *see also Charles v. Astrue*, No. 3:10–cv–134, 2011 WL 3206464 (E.D. Tenn. July 28, 2011).

The petitioner's objection addresses three of his four habeas claims, which the court will review in sequence below. To the extent that he relies on his previous reply or asserts a blanket challenge to issues not specifically discussed in the objection, his objection is waived for the reasons explained above.

II. CLAIM 1

The petitioner alleged in Claim 1 that trial counsel was ineffective for failing "to consult with or call a medical expert . . . to review or challenge the medical evidence of penetration." (ECF No. 1, at 4.) His objection does not dispute the Magistrate Judge's finding that this claim was procedurally defaulted because it was never raised in state court. (See ECF No. 34, at 4–8; ECF No. 35, at 2–3.) Instead, the petitioner argues that he has cause to overcome the default because his post-conviction counsel was ineffective for failing to raise it, and because Tennessee's post-conviction scheme would not have allowed him the necessary funds to develop the claim. (ECF No. 35, at 2–3.) Accordingly, he asks the court to appoint counsel and authorize payment for investigative and expert services to develop this claim now.

The petitioner's claim, however, is fundamentally flawed because there was no "medical evidence of penetration" at trial that counsel had any need to rebut. The nurse practitioner who examined the victim on March 17, 2008, testified that her anal-genital exam was within normal limits, which was to be expected given the length of time between the rape and the examination. (ECF No. 19-14, at 108–09.) As the petitioner himself argues, the report "neither confirm[ed] nor rule[d] out the possibility of sexual contact," (ECF No. 35, at 5) so it did not constitute

evidence of penetration. He argues that if counsel had properly investigated and consulted an expert, "he would likely have discovered that qualified medical experts could be found who would testify that the prosecution's physical evidence was not indicative of sexual penetration and thereby provided no corroboration of the victim's story," (ECF No. 35, at 6–7), but the nurse's testimony and report on its face already provided no medical corroboration of the reported rape.

Accordingly, this claim lacks the merit required to be "substantial" for the purpose of *Martinez v. Ryan*, 566 U.S. 1 (2012), without regard to whether the petitioner could satisfy the other *Martinez* factors required to overcome procedural default.

III. CLAIM 3

In Claim 3, the petitioner alleged that "[c]ounsel was ineffective for failing to object to the changes in the indictment or to bring out at trial changes in the indictment that established that the alleged crimes occurred [when he] was in jail." (ECF No. 1, at 8.) The Magistrate Judge has concluded that the state court's rejection of this claim on the merits was not unreasonable, even though the state court only addressed the deficient performance prong of the ineffective-assistance analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and not the prejudice prong. (ECF No. 34, at 11.)

The petitioner continues to argue that this court should review his claim *de novo*, with no deference to the state court's decision, because that court only addressed one prong of the *Strickland* analysis. The petitioner is correct that when a state court limits its ruling to one prong of *Strickland*, a reviewing habeas court that reaches the second prong must review that prong *de novo*. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."). But a federal court will only reach that second prong if it finds that the state court's determination of the first prong was unreasonable,

as the Supreme Court did in *Wiggins*. *Id.* Otherwise, there is no need to address both prongs at all: "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

The Magistrate Judge correctly concluded that the state court's determination that counsel's performance in "vigorously challeng[ing] the State's timeline of the offenses" was not deficient was not unreasonable. (See ECF No. 34, at 11.) The petitioner's objection does not dispute that finding, and is therefore without merit.

IV. CLAIM 4

The petitioner alleged in Claim 4 that trial counsel was ineffective for failing to object when the prosecutor questioned him about suppressed statements he made after his polygraph examination. (ECF No. 1, at 11.) The Magistrate Judge has concluded that this claim was defaulted at post-conviction appeal, where the state court found it waived due to insufficient briefing, and alternatively found that it fails on the merits. (ECF No. 34, at 14–18.)

The petitioner devotes the bulk of his objection on this claim to his argument that failure to consider the claim would result in a fundamental miscarriage of justice and other reasons he says should overcome the procedural default bar. (ECF No. 35, at 15–22.) But it is clear from the record that the claim would fail on its merits even if it were not defaulted. The trial court granted the petitioner's pre-trial motion to suppress his admission that he had rubbed his penis on the victim, because the *Miranda* warnings he received before the statement were delivered by a polygrapher rather than a law enforcement official. (ECF No. 19-14, at 2–6.) Despite finding that the petitioner had waived his claim that counsel was ineffective for allowing him to be questioned about the statement at trial, the Tennessee Court of Criminal Appeals noted the following:

> Our review of the trial record confirms that the Petitioner's statements made
> during the polygraph examination were suppressed prior to trial for use by the

4

State in its case-in-chief, but the trial court specifically ruled that the State could use such statements for impeachment purposes on cross-examination. The only questions posed to the Petitioner by the State in the record that appear to address statements he made during a police interview were asked during cross-examination by the State. Thus, it appears that these questions were not subject to the trial court's suppression order and that counsel had no grounds upon which to object.

(ECF No. 19-17, at 6 n.2.) The petitioner acknowledges that impeachment with otherwise excluded evidence is not improper on cross-examination. (ECF No. 35, at 12–13.) He asserts that the prosecutor's questions were nevertheless objectionable because "the cross-examination was unrelated to any testimony made by the defendant on direct." (ECF No. 35, at 13.) To the contrary, the transcript of his trial establishes that the prosecutor's questions about his admission were directly related to his testimony on direct examination:

> [direct examination]
> Q: When you were with them, did you ever have sexual contact with [the victim]?
> A: No, that's my baby.
> . . .
> Q: During the time that she was given the physical examination, the Nurse Practitioner stated that [the victim] was tested for diseases, she had none. Did you have any disease at that time?
> A: Me, no, but I never had any sex with my daughter so – I mean, of what relevance would that be?
> . . . [cross-examination]
> Q: I am just asking you about the Fleischer interview. Do you remember telling Fleischer that you rubbed your penis on [the victim]?
> A: No.
> Q: Are you denying that you told Fleischer that you rubbed your penis on [the victim]?
> A: Am I denying it?
> Q: Yes. Are you saying you didn't tell Detective Fleischer you rubbed your penis on [the victim]?
> A: I didn't – I didn't rub my penis on [the victim].
> Q: Okay, the question is did you tell Fleischer that you rubbed your penis on [the victim]?
> A: Yeah, I said it.

(ECF No. 19-3, at 136, 137, 158–59.)  The prosecutor thus used the petitioner's previous inconsistent statement to impeach his repeated denials of sexual contact with the victim, as the state court held he was entitled to do.  Claim 4 is without merit, and so is the petitioner's objection.

V. CONCLUSION

The court has reviewed the R & R, the objections, and the file.  The petitioner's objections are overruled, and the R & R is adopted and approved.  Accordingly, the petition is **DENIED**, and this action is **DISMISSED**.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases.  A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R.App. P. 22(b)(1).  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2).  A petitioner makes a "substantial showing" when he demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted).  "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Reasonable jurists could not debate whether the petitioner is entitled to relief. Accordingly, the Court **DENIES** a COA. The petitioner may still seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

It is so **ORDERED**.

                                                _____
                                                ALETA A. TRAUGER
                                                United States District Judge